RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2003 FED App. 0243P (6th Cir.)
File Name: 03a0243p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

_____

JOSE JURADO, JR.,
    *Petitioner-Appellant,*

    *v.*
            No. 02-1133

SHERRY BURT,
    *Respondent-Appellee.*

Appeal from the United States District Court
for the Eastern District of Michigan at Ann Arbor
No. 01-60045—Marianne O. Battani, District Judge.

Submitted: June 11, 2003

Decided and Filed: July 24, 2003

Before: MOORE and GIBBONS, Circuit Judges;
SCHWARZER, Senior District Judge.*

_____

**COUNSEL**

**ON BRIEF:** Sarah E. Hunter, Birmingham, Michigan, for
Appellant. Debra M. Gagliardi, OFFICE OF THE

_____

* The Honorable William W Schwarzer, Senior United States District
Judge for the Northern District of California, sitting by designation.

ATTORNEY GENERAL, CORRECTIONS DIVISION,
Lansing, Michigan, for Appellee.

_____

**OPINION**

_____

JULIA SMITH GIBBONS, Circuit Judge. Jose Jurado, a
Michigan prisoner, appeals from the order of the district court
dismissing his petition for a writ of habeas corpus as time-
barred under the applicable one-year statute of limitations set
forth in the Antiterrorism and Effective Death Penalty Act of
1996 (AEDPA). Jurado concedes that his petition was
untimely under AEDPA. He argues, however, that equitable
tolling should apply to the nineteen months during which he
was investigating and preparing an application for state post-
conviction relief, the filing of which would have tolled
AEDPA's limitations period. For the following reasons, we
reject this argument and affirm the district court's decision.

**I.**

On October 15, 1992, a jury convicted Jurado of criminal
sexual conduct and assault with intent to do great bodily harm
less than murder. Jurado then pled guilty to being a second
felony offender. He was sentenced to concurrent prison terms
of fifty to one hundred years for the criminal sexual conduct
conviction and ten to fifteen years for the assault conviction.
Jurado exhausted his direct appeals in Michigan's appellate
courts as of December 27, 1995. For AEDPA purposes,
Jurado's conviction became final on March 27, 1996, after the
ninety-day period during which Jurado could have filed a
petition for certiorari in the Supreme Court of the United
States seeking direct review of his conviction. *See, e.g.,
Bronaugh v. Ohio*, 235 F.3d 280, 283 (6th Cir. 2000).

AEDPA establishes a one-year statute of limitations period
for § 2254 petitions. *See* 28 U.S.C. § 2244(d). The one-year

period begins to run from the latest of four circumstances, one of which is "the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review." 28 U.S.C. § 2244(d)(1). AEDPA became effective on April 24, 1996. Because Jurado's conviction became final before AEDPA was enacted, he had a one-year grace period, lasting until April 24, 1997, in which to file his habeas petition. *Cook v. Stegall*, 295 F.3d 517, 519 (6th Cir.), *cert. denied*, 123 S.Ct. 699 (2002).

The one-year period of limitations is tolled by the amount of time that "a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending" in state court. *See* 28 U.S.C. § 2244(d)(2); *Hoggro v. Boone*, 150 F.3d 1223, 1226-27 (10th Cir. 1998) ("the one year grace period would be tolled by any time spent pursuing properly filed post-conviction proceedings"). Jurado did not, however, file an application for state post-conviction review within the one-year period.

Rather, he filed an application for state post-conviction review in November 1997, approximately one year and seven months after the one-year grace period began. Jurado retained his current counsel in the spring of 1996 to assist him in seeking state post-conviction relief under M.C.R. § 6.500 *et seq*. Through counsel, he filed a motion for relief from judgment on November 12, 1997. The trial court denied the motion on the merits and then denied Jurado's motion for reconsideration. Jurado's subsequent appeals to the state courts were denied, and the Michigan Supreme Court denied his delayed application for leave to appeal on February 29, 2000.

Almost one year later, on February 28, 2001, Jurado filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 in the United States District Court for the Eastern District of Michigan. In his habeas petition, Jurado argued that equitable tolling should apply to save his petition for

habeas relief because he was investigating and researching claims for his request for state post-conviction relief during the approximately nineteen months that elapsed between April 24, 1996 (the start of the one-year grace period) and November 12, 1997 (the date he filed an application for state post-conviction relief). Alternatively, he argued that his request for state post-conviction relief was "pending" during that time under the meaning of the statute, such that the statute tolled the period for filing for habeas relief.

The district court disagreed. It dismissed Jurado's habeas petition with prejudice, holding that equitable tolling did not apply and that the petition was untimely under the statute. The district court held that an application for state post-conviction relief must be filed in order to be "pending" for the purposes of tolling under 28 U.S.C. § 2244(d)(2). Further, it noted that a motion for state post-conviction review that is filed following the limitations period for seeking federal habeas relief cannot toll that period because there is no period remaining to be tolled. *See Webster v. Moore*, 199 F.3d 1256, 1259 (11th Cir. 2000). The district court declined to toll the statute during the period in which Jurado's counsel was investigating potential claims, attempting to discover facts to support his claims, and reviewing materials, because no application for state post-conviction relief had been filed during those time periods. The district court also noted that Jurado had failed to allege specific facts as to how he had "pursued" his state post-conviction relief claims during the nineteen-month period.

Jurado then filed a motion for reconsideration and attached an affidavit from his counsel, Sarah E. Hunter. Hunter described her work on Jurado's case. She asserted that she obtained Jurado's file from trial counsel on April 22, 1996, and "analyzed his case by looking at every issue my client identified." She "did legal research as to the viability of each issue, and spoke with witnesses and/or experts as needed." She made the following statements about her understanding of AEDPA's statute of limitations:

In preparing Mr. Jurado's case . . . I understood that Michigan did not have a statute of limitations as to when a petition for post judgment relief under MCR 6.500 et seq[.] must be filed. However, Michigan did have a rule indicating that only one such motion could be filed. Accordingly, when issues came up that my client and I believed we should look into, we did so. I chose not to rush and file "anything" to stop the clock under AEDPA, as many of my colleagues did, because I was concerned that Mr. Jurado might fail to exhaust his constitutional claims and fail to try to develop the factual predicates for those claims in state court. At that time, I was not aware of the case law that would evolve as to the tolling of the statute of limitations under AEDPA.

At the time, I believed the AEDPA statue of limitations was ambiguous as to whether the state court petition was "properly filed" or "pending". I do know that I was confused as to whether I would be required to file the motion in April, and that I determined that I would not risk filing prematurely in state court just to stop the clock and risk defaulting federal issues that we had not yet analyzed as to their viability. However, I anticipated that so long as we were steadily preparing Mr. Jurado's bid for post conviction relief by investigating potential claims, we should not file prematurely in state court just to stop the federal clock, as this would not be in the best interests of my client and would not serve finality in state court.

Hunter's affidavit chronicled her activities related to Jurado's case during the nineteen-month period. She asserted that she located and arranged meetings with various expert witnesses (including a toxicologist, a neurologist, and a psychologist); sought an advisory opinion on an undisclosed ethical question; and attempted to obtain additional evidence, such as the nurses' notes from the victim's hospital stay. She indicated that she drafted and revised the motion for state post-conviction relief over a five-month period, from July to

November 1997. She stated that it was her strategy to "investigate each and every claim or fact that the client indicates was not attended to at trial or on direct appeal," and that she and her client "honed the issues steadily . . . between April of 1997 and November of 1997." As noted, the one-year grace period expired on April 24, 1997.

The district court denied Jurado's motion for reconsideration, stating that "[t]he Court considered in its original opinion the discovery and research accomplished by counsel. The details of counsel's work does not modify the issues." It granted a certificate of appealability with respect to the issue of equitable tolling, and Jurado timely appealed.

## II.

Jurado concedes that his habeas petition was untimely. He also now concedes that his motion for state post-conviction review was not "properly filed" and "pending" within the meaning of 28 U.S.C. § 2244(d)(2) during AEDPA's one-year grace period, such that it did not toll the grace period under the statute. Thus, his only claim on appeal is that the doctrine of equitable tolling should apply to his case. We review this claim *de novo*. *Dunlap v. United States*, 250 F.3d 1001, 1007 (6th Cir. 2001) (where the facts of the case are undisputed and the district court rules as a matter of law that equitable tolling is unavailable, this court reviews *de novo*).

Jurado bears the burden of demonstrating that he is entitled to equitable tolling. *Griffin v. Rogers*, 308 F.3d 647, 653 (6th Cir. 2002). The doctrine is used sparingly by federal courts. *Graham-Humphreys v. Memphis Brooks Museum of Art, Inc.*, 209 F.3d 552, 560 (6th Cir. 2000) (citations omitted). "Typically, equitable tolling applies only when a litigant's failure to meet a legally-mandated deadline unavoidably arose from circumstances beyond that litigant's control." *Id.* at 560-61. The Supreme Court has explained that "[w]e have allowed equitable tolling in situations where the claimant has actively pursued his judicial remedies by filing a defective

pleading during the statutory period, or where the complainant has been induced or tricked by his adversary's misconduct into allowing the filing deadline to pass." *Irwin v. Dep't of Veterans Affairs*, 498 U.S. 89, 96 (1990). However, "[w]e have generally been much less forgiving . . . where the claimant failed to exercise due diligence in preserving his legal rights." *Id.; cf. Baldwin County Welcome Ctr. v. Brown*, 466 U.S. 147, 151 (1984) ("One who fails to act diligently cannot invoke equitable principles to excuse that lack of diligence."). "Absent compelling equitable considerations, a court should not extend limitations by even a single day." *Graham-Humphreys*, 209 F.3d at 561.

This court determines whether to equitably toll AEDPA's statute of limitations using the five-factor test set forth in *Andrews v. Orr*, 851 F.2d 146, 151 (6th Cir. 1988). *Dunlap*, 250 F.3d at 1010. The court considers: (1) the petitioner's lack of notice of the filing requirement; (2) the petitioner's lack of constructive knowledge of the filing requirement; (3) diligence in pursuing one's rights; (4) absence of prejudice to the respondent; and (5) the petitioner's reasonableness in remaining ignorant of the legal requirement for filing his claim. *Id.* at 1008. This list of factors is not necessarily comprehensive, and not all factors are relevant in all cases. *Miller v. Collins*, 305 F.3d 491 (6th Cir. 2002).

In this case, the first two factors – petitioner's lack of notice and lack of constructive knowledge of the filing requirement – weigh against equitable tolling of the limitations period. Jurado stated in his brief that he "had to choose between prematurely filing a petition for post-conviction relief in state court that was not adequately supported by facts, or waiting to file until all facts had been reasonably investigated and evaluated, even if the grace period under AEDPA expired." At the time, his counsel "believed it was more important to develop Petitioner's case in accord with standards of professional conduct" than it was to comply with AEDPA's statute of limitations, according to his brief. Thus, Jurado does not contend that he or his counsel was unaware of

AEDPA's one-year limitations period. Rather, they made a tactical decision to continue investigating claims for his state post-conviction relief application although they were aware that his time in which to file for habeas relief would expire.

Where the litigant does not claim lack of knowledge or notice of the filing requirement, this court's inquiry is focused on examining his diligence in pursuing his rights and the reasonableness of his ignorance of the effect of his delay. *See Andrews*, 851 F.2d at 151. Jurado contends that he was diligent in pursuing his rights. In support, he offers Hunter's affidavit, which details her work on his case. She states that she received his file on April 22, 1996, and met with Jurado and his family several times thereafter. She sought an opinion from the state bar regarding an undisclosed ethics question and received the opinion on June 20, 1996. She contacted an undisclosed expert in June 1996, met with him in October 1996, and determined in December 1996 that he would not benefit Jurado's case. In January 1997, Hunter spoke to a toxicologist about the effects of the drugs that the victim received in the emergency room where the victim gave statements about the crime. She also spoke to a psychologist about the effect of drugs, alcohol, and pain medication on a person's ability to remember or contrive. She reviewed the DNA evidence in Jurado's case but determined that there was no meritorious issue to raise with regard to it. In April 1997, she sent a subpoena to the hospital where the victim was treated, in order to obtain nurses' notes.[1] In April 1997, AEDPA's one-year grace period expired. Though aware of the language of the statute's tolling provision, Hunter "chose not to rush" to file the request for state post-conviction relief. Hunter's affidavit accounts for the additional seven months

---

[1] The hospital declined to honor the subpoena because there was no pending case. As the district court pointed out, Hunter could have filed the motion for relief from judgment at that time with an affidavit attesting to her unsuccessful attempts to obtain the medical records. The hospital then would have likely provided the records in light of the pending case.

as well. In May 1997, she considered and abandoned an issue related to Jurado's habitual offender charge. In June, she gave a draft of the motion for post-conviction relief to Jurado and his family. In July, Hunter revised the draft's sufficiency of the evidence argument. Also, she obtained and reviewed Jurado's medical records from Mexico. She attempted to contact several neurologists and spoke to two, Drs. Sid Broder and John Blase. In August 1997, Hunter met with Jurado and they finally determined which issues to raise in the motion for state post-conviction relief. On November 12, 1997, she filed the motion.

Although Jurado's counsel certainly undertook investigatory and preparatory actions in Jurado's case during the nineteen-month period, these actions did not constitute due diligence in pursuit of his rights. Jurado's trial lasted three days and involved three trial transcripts, plus a fourth transcript where Jurado then pled guilty to being a habitual offender. The district court found that the case was not complex and that the factual bases for the three claims raised in the habeas petition (sufficiency of evidence, confrontation clause, and ineffective assistance of counsel) "could all have been readily apparent after reading the transcripts." A reasonably diligent attorney could have pursued these claims within one year's time. Arguably, counsel's activities amount to due (and perhaps excessive) diligence in pursuing every possible theory, no matter how feeble. They do not, however, amount to diligence in pursuing his rights, where counsel was on notice of AEDPA's one-year grace period and failed to act within the period. As the district court stated, AEDPA does not convey a right to an extended delay while a habeas petitioner gathers every possible scrap of evidence that might support his claim. *See Flanagan v. Johnson*, 154 F.3d 196, 199 (5th Cir. 1998). Neither does the doctrine of equitable tolling grant such a right.

The fourth factor, whether respondent was prejudiced by the delay in filing, is irrelevant here. Absence of prejudice is a factor to be considered only after a factor that might justify

tolling is identified. *Baldwin County*, 466 U.S. at 152; *Andrews*, 851 F.2d at 151.

The final factor is petitioner's reasonableness in remaining ignorant of the legal requirement for filing his claim. Jurado's counsel was aware of the section of AEDPA that provides for tolling, 28 U.S.C. § 2244, which states that, "[t]he time during which a properly filed application for State post-conviction or other collateral review . . . is pending shall not be counted toward any period of limitation under this subsection." She states that she believed this section was ambiguous as to whether an application that had not been filed with any court was "properly filed" and "pending." She "was not aware of the case law that would evolve as to the tolling of the statute of limitations under AEDPA." Thus, she "was confused as to whether [she] would be required to file the motion in April." *Id.*

Generally, "a lawyer's mistake is not a valid basis for equitable tolling." *Whalen v. Randle*, 37 Fed. Appx. 113, 120 (6th Cir. 2002); *Fahy v. Horn*, 240 F.3d 239, 244 (3d Cir. 2001) ("attorney error, miscalculation, inadequate research, or other mistakes have not been found to rise to the 'extraordinary' circumstances required for equitable tolling"); *Harris v. Hutchinson*, 209 F.3d 325, 330-31 (4th Cir. 2000) (attorney's misreading of AEDPA did not require equitable tolling). "[T]he remedy for negligence by a party's lawyer is generally a legal malpractice suit or an ineffective assistance of counsel claim, not forcing the opposing party to defend against a stale claim." *Whalen*, 37 Fed. Appx. at 120 (citing *Taliani v. Chrans*, 189 F.3d 597, 598 (7th Cir. 1999)). Jurado's brief cites no authority showing that it was reasonable to believe that a motion that was merely being investigated and drafted was "properly filed." In view of the plain language of the statute, this belief was not reasonable.

Accordingly, application of the five-factor test indicates that equitable tolling is not appropriate in this case. We therefore affirm the district court's decision.